Filed 1/8/24

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| VINCENT GARCIA et al., | |
| Plaintiffs and Appellants, | E079859 |
| v. | (Super.Ct.No. RIC1902570) |
| TEMPUR-PEDIC NORTH AMERICA, LLC, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. Godofredo Magno, Judge. Affirmed.

Zeiler Law Group and Kerry P. Zeiler for Plaintiffs and Appellants.

O'Hagan Meyer, Clint D. Robison, Vickie V. Grasu, and Angeli C. Aragon, for Defendant and Respondent.

Consumers brought tort claims against a mattress retailer and manufacturer for injuries allegedly suffered while sleeping on a mattress. While the parties were conducting discovery, the plaintiffs settled with the retailer. The trial court then denied them leave to amend their complaint against the manufacturer, and they voluntarily dismissed those claims before filing a new lawsuit.

The manufacturer moved for costs as the prevailing party in the dismissed lawsuit. The trial court ordered the consumers to pay some of their costs, including the costs of depositions and service of process. On appeal, the consumers argue it was improper to award costs related to depositions that were noticed but did not occur. We hold there is no such blanket exception, and the proper analysis focuses on whether costs were reasonably necessary to litigating a case when incurred, not whether the costs could have been avoided in retrospect. Because the trial court did not abuse its discretion in finding the costs were reasonably necessary, we affirm.

**I**

**FACTS**

On April 23, 2019, appellants Vincent and Esther Garcia sued Mattress Showroom Inc. and respondent Tempur-Pedic North America, LLC (Tempur-Pedic), alleging the Tempur-Pedic Contour Supreme Mattress they bought at the Mattress Showroom on September 17, 2017 was defective.

The Garcias claimed the mattress sagged, and that sleeping on it caused or exacerbated Vincent's spine, back, neck, and jaw injuries. The complaint stated a products liability cause of action for defective design and manufacture of the mattress, violation of the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.), and claims for breach of express and implied warranties.

After the trial court denied Tempur-Pedic's motion for summary judgment, the court set a trial readiness conference and trial date. But then the Garcias moved to amend their complaint. They sought to add a new cause of action under state unfair competition law or the federal Magnuson-Moss Act, 15 U.S.C. § 2301 et seq., and they sought an injunction requiring Tempur-Pedic to contact all consumers who bought their products. The trial court denied the motion because the delay was unjustified, and the amendments would expand the litigation by adding a new cause of action and seeking a new "expansive, almost class action type remedy," both requiring substantial new discovery. This court denied a writ petition in which the Garcias challenged the decision to deny leave to amend.

After the trial readiness conference, the Garcias filed a request for dismissal. They sought dismissal with prejudice of their claims against Mattress Showroom because they had reached a settlement. They sought dismissal without prejudice of the claims against Tempur-Pedic. The trial court dismissed the case as requested.

The Garcias next sued Tempur-Pedic afresh, including their previous claims and alleging violations of the unlawful, unfair, and deceptive business practices statute (Code Civ. Proc., § 17200 et seq.) and the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.). In the new complaint, the Garcias sought to represent a class of Californians who bought or owned similar mattresses since 2017.

Before us in this appeal is the motion for costs Tempur-Pedic filed as a prevailing party in the first lawsuit. Included in the memorandum of costs were requests for costs of $5,174.34 for depositions and $2,491.24 for service of process. The depositions involved medical professionals the Garcias had identified as Vincent Garcia's treating physicians. Tempur-Pedic claimed $527.80 for the deposition of Dr. Daniel McLarty and $818.45 for the deposition of Dr. Carter Lane. Tempur-Pedic also requested costs for service of process on McLarty ($222.35), Dr. Randall Tan ($306.82), Dr. Kathy Lin Chuang ($222.93), and Dr. Perry Sahagun ($222.93), and two service of process fees each for Lane ($227.03 and $363.02) and Dr. James Slepski ($266.33 and $222.87).

The Garcias moved to tax costs or strike Tempur-Pedic's memorandum of costs. They said Tempur-Pedic had deposed only three of the eight witnesses. The depositions of McLarty, Lane, Tan, Chuang, and Sahagun did not go forward for diverse reasons. Lane did not appear for his deposition, and Tempur-Pedic later identified him as a nonretained expert whose testimony may be offered at trial. Tan died before he was served. Tempur-Pedic chose to take McLarty's deposition off the calendar. Chuang and Sahagun were not deposed, but the Garcias provide no reason. Though the Garcias

4

conceded the deposition of Slepski occurred, they argued Tempur-Pedic could not recover service of process fees for his deposition because they served him twice due to their own mistake and did not identify which fee was necessary. In total, the Garcias contested $1,346.25 of the claimed costs of deposition and $2,054.28 of the claimed costs of service of process.

Tempur-Pedic responded that the costs of McLarty's and Lane's depositions were justified. They sought $527.80 for McLarty's deposition to recover a fee they paid to the court reporter for late cancellation after the Garcias' counsel last-minute indication that the witness was unavailable. They sought $818.45 for a certificate of nonappearance after Lane failed to show for his deposition. They argued they were entitled to recover costs for service of process completed by a registered process server whether or not the witness appeared, and they represented that Tan was identified as a treating physician and served before they were aware he had died. They argued any duplication of service fees was due to the Garcias changing the witnesses' available dates.

The trial court awarded all the costs outlined above. The court determined the depositions of all the medical professionals were reasonably necessary because they were Vincent Garcia's treating physicians. The court explained it did not matter that the depositions were not taken before the case was dismissed. As to Tan, the court awarded the costs because there was no indication Tempur-Pedic was aware of his death when they served him.

## II

## ANALYSIS

The Garcias argue the trial court erred by awarding costs for depositions that did not occur. We disagree because there was a sound basis for finding the costs were reasonably necessary to the litigation when incurred.

Code of Civil Procedure section 1033.5 permits the recovery of costs for the "[t]aking, video recording, and transcribing necessary depositions" as well as for "[s]ervice of process by a public officer, registered process server, or other means." (Code Civ. Proc., § 1033.5(a)(3)(A) & (a)(4)), unlabeled statutory citations refer to this code.) Costs are allowable if they are "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation." (§ 1033.5, subd. (c)(2).) "To the extent the statute grants the court discretion in allowing or denying costs or in determining amounts, we reverse only if there has been a 'clear abuse of discretion' and a 'miscarriage of justice.'" (*Chaaban v. Wet Seal, Inc.* (2012) 203 Cal.App.4th 49, 52 (*Chaaban*).)

The nature of the case determines the necessity of discovery. (*Chaaban*, *supra*, at p. 57.) The deponents served for deposition in this tort case were necessary witnesses. The Garcias identified them as medical professionals who would know about the injuries to Vincent Garcia, a required element of his claims. (*Culbertson v. R.D. Werner Co., Inc.* (1987) 190 Cal.App.3d 704, 711-712.)

6

The Garcias rightly do not argue the witnesses themselves were not reasonably necessary to litigating the case. Nor do they challenge the reasonableness of awarding a prevailing party amounts they paid to court reporters or process servers, or the reasonableness of the amounts Tempur-Pedic has shown they paid. Instead, they ask us to hold it is always improper to award costs incurred for depositions that did not occur. We agree with the trial court that it is legally proper to award such costs.

The witnesses involved are medical professionals the Garcias identified as treating Vincent Garcia for his injuries. Defense counsel of course was justified in pursuing the depositions of these witnesses. Along the way, Tempur-Pedic incurred common costs of conducting discovery, including fees for service of process and customary fees charged by court reporters.

When they incurred these charges in the ongoing case, nothing suggests Tempur-Pedic or their counsel knew the case was especially likely to terminate without the depositions occurring. Civil cases often settle before trial, at various stages. Depositions themselves, as they occur, can clarify the strength of each parties' case, and can foster a settlement. There is no blanket reason to conclude that the costs for depositions that did not occur were unwarranted when they were noticed. It is no importance to the award of costs that the litigation terminated in Tempur-Pedic's favor *before* the depositions were completed. In this case, the Garcias' dismissal of their claims against Tempur-Pedic does not even appear as something that Tempur-Pedic should have predicted at any point, much less at the time of noticing the depositions.

The trial court properly considered whether the costs were reasonably necessary to litigating the case at the time they were incurred. Hindsight is no guide here. That is why courts routinely refuse to tax costs on the ground that a deponent did not end up testifying or providing useful testimony at trial. (E.g., *Chaaban*, *supra*, 203 Cal.App.4th at p. 57 [affirming award of deposition costs as reasonably necessary even though counsel was unable at trial to introduce exhibits into evidence through the witness].) It is enough that the Garcias identified the professionals as potential witnesses about a core litigation topic, and nothing had occurred to make it appear they were not reasonably necessary when Tempur-Pedic incurred the costs. (*Ibid.*)

Some of the challenged costs arose because witnesses failed to appear for their depositions, which is not a reason to deny Tempur-Pedic costs. McLarty's deposition cost was a fee paid to the court reporter for a late cancellation. Lane's deposition cost was a fee for a certificate of nonappearance when the witness failed to appear. The trial court did not abuse its discretion by holding them responsible for these costs.

The Garcias argue it does not matter whether the noticed depositions were reasonably necessary because they read section 1033.5 as expressly limiting awards to costs of depositions that were completed. Section 1033.5 subdivision (a) lists several categories of allowable costs. Among those, subdivision (a)(3)(A) allows costs related to "[t]aking, video recording, and transcribing necessary depositions, including an original and one copy of those taken by the claimant and one copy of depositions taken by the party against whom costs are allowed." While that provision envisions the award of costs

related to completed depositions, that is because its focus is on reimbursing the parties for the costs of recording them. Subdivision (a)(4), by contrast, says nothing about "taken" depositions; it allows costs for "[s]ervice of process by a public officer, registered process server, or other means." Thus, the statute does not limit the award of costs of service to completed depositions as the Garcias claim.

The only non-service costs the Garcias challenge are the expenses related to obtaining the certificate of nonappearance related to Lane's deposition and the late cancellation fee related to McLarty's deposition. At oral argument, the Garcias conceded the cost of the certificate of nonappearance is recoverable under subdivision (a)(3) because such a certificate is the equivalent of a deposition transcript where a witness fails to appear. We conclude a late cancellation fee paid to a reporter may likewise be recovered as an expense related to taking a deposition.

The Garcias also object to paying the costs of Lane's notice of nonappearance on the ground that Tempur-Pedic identified him as a nonretained expert witness. Fees of expert witnesses are not automatically recoverable. (Section 1033.5, subds. (a)(8), (b)(1). Tempur-Pedic, though, did not name Lane as a retained expert, which it would do by naming him "for the purpose of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial of the action.'" (*Schreiber v. Estate of Kiser* (1999) 22 Cal.4th 32, 36, quoting former Code Civ. Proc., § 2034, subd. (a)(2).) Instead, they named him as a fact witness, a "treating physician . . . [who] learns of the plaintiff's injuries and medical history because of the underlying physician-patient relationship."

(*Ibid.*) The trial court thus did not abuse its discretion by concluding Tempur-Pedic deposed him as a fact witness reasonably necessary to the litigation. Tempur-Pedic also identified Slepski, Chuang, and Sahagun as nonretained experts, and allowing recovery of costs related to serving them with process was reasonable for the same reasons.

The Garcias find fault with Tempur-Pedic for seeking to recover the costs of serving Tan because he had died before being served. Yet the Garcias had identified him as a person with knowledge, and Tempur-Pedic represented they did not know of his death until he had been served. Had the Garcias informed Tempur-Pedic of Tan's death, it would be unreasonable to serve him for a deposition. But until Tempur-Pedic had reason to know of the death, it was reasonable for them to treat Tan as a necessary witness, and the trial court did not abuse its discretion by awarding the costs of serving him as prevailing party costs.

## III

## DISPOSITION

We affirm the order awarding costs. Respondents are entitled to their costs on appeal.

CERTIFIED FOR PUBLICATION

RAPHAEL                    
                                                J.

We concur:

RAMIREZ                    
                              P. J.

MILLER                    
                              J.

10